[Civ. No. 372.   Third Appellate District.—October 4, 1907.]

# ROBERT PORTER and ZIPPORAH RUSS, Respondents, v. ANDREW J. COUNTS, Appellant.

APPEAL—REVIEW OF EVIDENCE—SPECIFICATIONS OF INSUFFICIENCY.—Specification of insufficiency of the evidence to sustain the findings must be deemed sufficient to justify a review of the sufficiency of the evidence upon appeal, when there is a reasonably successful effort to state the particulars, and they are such as may have been sufficient to inform the opposing counsel and the court of the grounds, especially where all the evidence is presented in the transcript.

ID.—EJECTMENT—SUBDIVISIONS OF INCOMPLETE SECTION—LOCATION OF DIVISION LINE—UNCERTAINTY OF EVIDENCE AND OF RECORD—REVERSAL.—In an action of ejectment, where it appears that plaintiff and defendant own adjoining subdivisions of an incomplete section, and that there must be a corresponding diminution of the one hundred and sixty acres claimed by plaintiff and of the adjoining one hundred and sixty-nine acres claimed by defendant, and the action proceeded upon the theory that issue was joined as to the location of the true division line between them, and the evidence of its location was uncertain, but it was shown that plaintiff's land included a portion of defendant's improvements, the extent of which *does not appear with certainty*, either from the evidence, findings or judgment, the judgment must be reversed in order that the record may be made certain.

ID.—FINDING AGAINST EVIDENCE.—In view of the evidence, a general finding in the language of the complaint that the defendant had ousted and ejected the plaintiff from the premises described in the complaint, and withholds the possession thereof from plaintiff, without fixing the extent of defendant's possession thereof, is against the evidence.

ID.—NECESSITY OF ACCOUNTS—DESCRIPTION IN RECORD.—The judgment in ejectment determines the question of title as well as possession, and in order to give stability thereto, the judgment and the corresponding findings should describe accurately such portion of the land actually in dispute as the plaintiff's proof shows that he is entitled to, so that a disputed boundary may be accurately located, and the limits to which title is established by the judgment may be made to appear from the record, and so that the judgment may point out to the sheriff, who serves the writ of possession, the extent and location of the land and improvements recovered, without resort to extraneous evidence.

APPEAL from a judgment of the Superior Court of Humboldt County, and from an order denying a new trial.   E. W. Wilson, Judge.

The facts are stated in the opinion of the court.

H. L. Ford, and George B. Collins, for Appellant.

J. H. G. Weaver, for Respondents.

BURNETT, J.—The action is in ejectment. From the judgment in favor of plaintiffs defendant has appealed on a bill of exceptions.

The only assignment of error is that the findings are not supported by the evidence, and respondents claim that this question should not be considered because of the insufficiency of the specification.   The findings are challenged as follows: "The court erred in finding that on the first day of July, 1902, the plaintiffs were and for a long time prior thereto had been the owners in fee entitled to the possession and in the peaceful possession and occupancy of the lands and premises described in the complaint."   This is followed by a similar specification as to each of the other findings and then appellant proceeds to state what "the evidence shows."   In support of their position respondents cite *Parker* v. *Reay,* 76 Cal. 105, [18 Pac. 124]; *Knott* v. *Peden,* 84 Cal. 299, [24 Pac. 160]; *De Molera* v. *Martin,* 120 Cal. 544, [52 Pac. 825]; *Kyle* v. *Craig,* 125 Cal. 116, [57 Pac. 791]; *Taylor* v. *Bell,* 128 Cal. 306, [60 Pac. 853].   It must be admitted that in these cases the supreme court has construed in harmony with respondents' contention the language: "must specify the particulars in which such evidence is alleged to be insufficient," found in section 648 and subdivision 3 of section 659 of the Code of Civil Procedure.

In the Taylor case, *supra,* the specification was: "The court erred in finding (and then follows in exact language the finding of the court) but on the contrary the court should have found," etc.   In the course of the discussion it is said: "These specifications fail to comply with the requirement of section 659 of the Code of Civil Procedure . . . and in the language of that section the statement was not entitled to be

considered by the court at the hearing of the motion. What 'the court should have found' is only another mode of statting what 'the evidence shows,' a form of specification which has been repeatedly held to be insufficient.''

It will be observed from the foregoing sections of the Code of Civil Procedure that the requirement is the same in a ''statement'' as in a ''bill of exceptions.'' But the cases cited have been overruled by the subsequent decisions of the supreme court. In *Drathman* v. *Cohen,* 139 Cal. 313, [73 Pac. 181], specifications somewhat similar to those in the case at bar were held to be sufficient, and the court, through Mr. Justicé Shaw, says: ''The strongest case, and the one usually cited upon objections to specifications of this character, is *De Molera* v. *Martin,* 120 Cal. 548, [52 Pac. 825]. If the decision in that case were followed, perhaps the specifications here in question would be declared insufficient; but experience has proven that the rule then laid down was too strict, and that it has been productive of evil and not good. Perhaps some of the other cases cited may also tend to establish the same rule. But latterly the court has been more liberal in such matters and the rule now followed is stated in *American etc. Co.* v. *Packer,* 130 Cal. 459, [62 Pac. 744], as follows: 'Whenever there is a reasonably successful effort to state the particulars and they are such as may have been sufficient to inform the opposing counsel and the court of the grounds, . . . this court ought not to refuse to consider the case on appeal, and especially where, as in this case, the transcript shows that all the evidence has been brought up.' '' In the case at bar, also, the evidence is all presented in the transcript.

The cases of *Bell* v. *Staacke,* 141 Cal. 186, [74 Pac. 774], and *Harris* v. *Duarte,* 141 Cal. 497, [70 Pac. 298, 75 Pac. 58], are directly opposed to respondents' contention and expressly overrule the earlier decisions. In the latter case it is said: ''A specification is sufficient when it points to a particular finding.'' It must be held, therefore, that the specifications are sufficient to challenge an examination of the evidence to determine its sufficiency to support the findings.

The case is somewhat peculiar. The complaint alleges ''that on the first day of July, 1902, the plaintiffs herein were the owners in fee, entitled to the possession and in the

possession of that certain tract of land situate, lying and be-
ing in the county of Humboldt and particularly described
as follows, to wit: The southeast quarter of the northwest
quarter and the east half of the southwest quarter of section
nineteen; and the northeast quarter of the northwest quarter
of section twenty, township 3 north, range 4 east, H. B. & M.
That the said plaintiffs are now at the commencement of this
action the owners in fee of the above described land and
entitled to the possession of the same." Then follows the
usual allegation of ouster by defendant on the first day of
July, 1902, and the withholding by said defendant of the
possession of "said lands and premises."

The answer really raises no issue as to the ownership or
right to the possession at any time of plaintiffs of said prop-
erty or of plaintiffs' possession on the first day of July, 1902,
or of the ouster or the withholding of possession by the de-
fendant, since the denials are in the form of a "negative
pregnant." Defendant also filed a cross-complaint in which
he alleges: "That heretofore, to wit, on the 27th day of No-
vember, 1901, the said defendant made homestead entry
. . . for lots 2, 3 and 4 of section 19 and lot 1 of section 30,
T. 3 N. of R. 4 E., H. M., and within six months thereof es-
tablished a residence thereon and ever since has and now does
reside upon and cultivate the same, and is entitled to the
possession of and is possessed and in the possession of the
same and of the whole thereof." Then follows the allegation
that plaintiffs have no interest in any part of said property
but that they claim some adverse interest, and the cross-com-
plaint concludes with the usual prayer to quiet title and for
general relief. Plaintiffs admit in their answer to this cross-
complaint that defendant made the homestead entry, but deny
that he ever made settlement or established his residence on
said property, or that "he has ever resided or does now reside
upon said lands and premises." Plaintiffs do not claim to
have any interest in or to said land described in the cross-
complaint nor do they deny defendant's right to the pos-
session of the same. Their answer virtually amounts to a
disclaimer, and defendant's answer to the complaint might
have been considered an admission of all its material allega-
tions except as to the rental value and damages which are ex-
plicitly denied.

Again, the land described in the complaint does not purport to be the same as that in the cross-complaint. By the pleadings they appear and by the evidence they are shown to be distinct tracts lying, one on the west and the other on the east of the center line running north and south through said sections. The sufficiency of the pleadings, however, was not challenged and the trial proceeded upon the theory apparently that the issue was definitely presented as to the location of this division line between the lands of plaintiffs · and defendant and as to the ownership of a small strip composed of a few acres—the exact quantity of land not being disclosed—adjoining this uncertain division line and including a house and some other improvements placed there by plaintiffs and of which the defendant took possession on or about the first day of July, 1902, and which he was retaining at the time of the trial.

The evidence shows without conflict that plaintiffs are the owners and entitled to the possession of the legal subdivisions of the sections described in the complaint and that defendant has the homestead right in and to the lots as described in the cross-complaint. The difficulty, however, grows out of the fact that said sections 19 and 30 are not complete. Each contains less than six hundred and forty acres and a corresponding diminution must be made of the one hundred and sixty acres claimed by plaintiffs and of the one hundred and sixty-nine claimed by defendant. This involves the location of the said division line, and the objection urged by appellant is that the line as established by one Elsemore and upon whose testimony plaintiffs rely is not in accordance with the requirement of a legal survey. In other words, it is insisted that he did not determine the location of the division line in the manner provided by the rules and regulations of the general land office in reference to the "restoration of lost or obliterated corners and subdivision of sections." We think, however, that his testimony is legally sufficient to support a finding of fact that this division line is some distance west of its location as claimed by defendant and that said defendant was in possession of a portion of the land of plaintiffs, including the aforesaid improvements. Mr. Elsemore testified that he had been a civil engineer for fifteen or sixteen years; that he surveyed the land described in the com-

plaint; that at that time he had with him the government
field-notes; that he located all the corners upon the township
line and all the other government corners which he considered
necessary to enable him to make the survey; he then describes
in detail how he proceeded to locate the line, and he says
that he followed the instructions laid down by the Depart-
ment of the Interior; that the section contains less than six
hundred and forty acres and that there are not one hundred
and sixty acres in the tract belonging to plaintiffs or in that
owned by defendant and that the division line ''passes right
through a shed or barn and the buildings were, I should
judge, three or four hundred feet east of that, I didn't notice,
and the improvements were practically all upon the land in
controversy.'' The court asked the witness this question:
''On which side of the line as you draw it, would the house,
the place of residence of the defendant where he resides, be
on the south, east or west of that line?'' and the answer
is: ''This is the line dividing it. The house is on the east of
the line three or four hundred feet. I just guess at the dis-
tance. There is a shed or barn upon the land and the line ran
right through the window of the barn, through the west
side of it. It is a small shed, I suppose 12 by 16, something
like that. Most of the corrals are on the east side of the line,
but the fence extends west of where the line is, I suppose
sixty or seventy-five feet, something like that.'' He is the
only witness who testified to having made a survey of the land,
and it is obvious that his testimony does not possess the
quality of certainty adequate without additional information
or another survey for an accurate description and location of
the said division line or of the disputed tract in the possession
of defendant. The fence, he says, is on defendant's land,
and the residence on plaintiffs', and the line runs through the
window of the barn. But these facts are too meager to con-
stitute the basis for a finding and judgment. But when we
turn to the findings themselves we ascertain that as far as the
settlement of the real controversy between the parties is con-
cerned they are more uncertain than Elsemore's testimony.
In fact, they do not purport to locate the division line at all
or to describe the disputed tract so that it can be identified.
For all practical purposes the parties are left just where
they were at the beginning of the trial, each indisputably

the owner of the tract as he has described it in general terms in his pleading, but with the extent of his holding really undetermined because the division line is not definitely located. For instance, the court finds: "That while the plaintiffs were in the possession and occupancy of the lands and premises *described in the complaint,* to wit, on or about July 1, 1902, the said defendant entered into and upon said lands and premises and ousted and ejected the plaintiffs therefrom and ever since has withheld and now withholds the said lands and premises from the possession of the said plaintiffs." Under the peculiar circumstances of this case such a finding is as uncertain as the one considered in *Davis* v. *Judge,* 44 Vt. 500, wherein it is said: "The declaration supposes the defendant to be in possession of land of the plaintiff lying north of and adjoining the defendant's land. But the land which the plaintiff by his declaration claims to own and recover, being bounded on the south by the defendant's land, the declaration leaves it uncertain to what extent or to what limit the plaintiff claims. It is true he claims to recover to the division line between the land of the plaintiff and the land of the defendant; but where that line is, is the very question in dispute, and the plaintiff by his declaration does not show where he claims it to be. Hence a verdict and judgment that the plaintiff recover the premises described in the declaration only establishes the plaintiff's title and right of possession of the premises extending south to the defendant's land; but where that boundary is, the record furnishes no means of ascertaining."

The effect of the finding and judgment in the case at bar is the same, although, as we have seen, the uncertainty is disclosed by the evidence and not by the description of the land in the pleadings. The extent or limit of plaintiffs' land here depends upon the location of the division line, and from the record it cannot be ascertained where that is.

Under our practice it is more important than at common law that in ejectment the property be described accurately, because it is more than a mere possessory action. The question of title, as well as of possession, is generally involved and a judgment upon the merits then is conclusive as to the ownership of the property upon the parties and their privies. But, again, such finding is not supported by the evidence, inasmuch

as it appears that defendant was in possession of only a small portion of said land described in plaintiffs' complaint. "The general finding, in the language of said complaint, is therefore insufficient. In order to give stability to the judgment it and the corresponding findings should describe the land *or such definite portion* thereof as the plaintiffs' proof shows that he is entitled to." (*Shaw* v. *Hill,* 79 Mich. 86, [44 N. W. 422] ; *Wickersham Banking Co.* v. *Rice,* 137 Cal. 506, [70 Pac. 546].)

The premises should be so described that the record will furnish evidence of the limits to which title is established by the judgment as well as to point out to the sheriff who serves the writ of possession the extent and location of the land recovered. (*Davis* v. *Judge,* 44 Vt. 500; *Bricken* v. *Cross,* 140 Mo. 166, [41 S. W. 735].) Respondents say: "Whether the line referred to is *a* line or *the* line or 'no line at all' is not material. It was a sufficient determining factor to enable the witness (Elsemore) to state positively that the house and improvements occupied by the defendant were on the lands of plaintiffs, those described in their complaint. The court has so found, and certainly the evidence is sufficient to sustain the finding." But is there any such finding? Certainly it is not so found specifically, and such fact cannot be determined by an inspection of the judgment-roll. Extraneous evidence not suggested by the judgment would be required to authorize the sheriff to put plaintiffs into the possession of said improvements.

Again, declare respondents in their brief: "The issue was the location of the house and improvements occupied by the defendant—were they situated on the lands described in plaintiffs' complaint? Elsemore testifies that they were, the court found that they were, and this settles the matter." The cause was undoubtedly tried as though that were the issue, but the trouble is that the finding does not correspond with the theory of the trial.

In order that the controversy between the parties may be definitely settled, we think the boundary line should be accurately located and the disputed tract described with precision. We see no reason why there should be a complete retrial, but additional evidence should be taken on the points suggested and the finding made explicit in reference thereto.

The judgment is reversed and the cause remanded for a new trial upon the evidence heretofore submitted and upon such further evidence on the issue as to the location and extent of the disputed tract as either party may desire to submit.

Chipman, P. J., and Hart, J., concurred.